HURON VALLEY SCHOOLS v SECRETARY OF STATE

Docket Nos. 253649, 253650. Submitted May 10, 2005, at Lansing. Decided June 7, 2005, at 9:05 a.m. Leave to appeal sought.

The Huron Valley Schools, its superintendent, Robert M. O'Brien, and the Michigan, Huron Valley, and Utica education associations brought an action in the Ingham Circuit Court against the Secretary of State, relating to threats of enforcement of the Michigan Campaign Finance Act (MCFA), MCL 169.201 *et seq.*, by the Department of State against school districts and others relative to an upcoming referendum concerning school vouchers. The department sent a memorandum to all school districts advising them that the MCFA prohibits the use of public resources to support or oppose a candidate or ballot question and supplying its interpretation of MCL 169.257, which governs contributions and expenditures of public schools. The department later sent a specific letter to O'Brien stating that the Huron Valley Schools may have violated MCL 169.257 through expenditures made in circulating certain materials. The plaintiffs regarded the memorandum and letter as ignoring the express language of the statute relating to statutory exceptions and as violating the associations' right to use the school's internal communications to communicate with their members. The department argued that it had properly interpreted the statute, that the department's interpretations were entitled to substantial deference, that the plaintiffs had not exhausted their administrative remedies, obviating jurisdiction for the circuit court, and that MCL 169.206, which lists exceptions to the general prohibitions of the MFCA, does not apply to school districts using public resources to communicate with public employees. The court, Michael G. Harrison, J., denied the plaintiffs' motion for a preliminary injunction against the defendant. The court, Thomas L. Brown, J., subsequently granted summary disposition for the Huron Valley Schools and O'Brien on count I relating to the department's failure to proceed after its decision with a review subject to due process requirements. The court granted summary disposition for the defendant with regard to count II, determining that the association plaintiffs could not use the school district communication systems because those systems are a public asset, the use of which is a prohibited

expenditure of public funds. The court granted summary disposition for the defendant with regard to count III, concluding that there was no violation of the constitutional rights of the associations by the department depriving the associations any right to communicate with their members using the internal mail systems of the schools. The defendant appealed relating to count I, the plaintiffs appealed relating to counts II and III, and the appeals were consolidated.

The Court of Appeals *held*:

1. The trial court had no jurisdiction to grant a declaratory judgment. The plaintiffs failed to exhaust their administrative remedies. An action for declaratory judgment cannot be maintained to resolve a dispute that is within the exclusive jurisdiction of an administrative agency. The MCFA is subject to the formal procedure set by the Administrative Procedures Act, MCL 24.201 *et seq.*, for declaratory judgments. The communications sent from the department did not constitute a final decision for which judicial review is available. To challenge the department's interpretations, the plaintiffs should have made a request for a declaratory ruling under MCL 260.215(2). If the defendant refused to make such a ruling, or she made a ruling with which the plaintiffs did not agree, then the plaintiffs could have sought a declaratory judgment in the circuit court. Because MCL 260.215(16) states that there is no private cause of action in law or equity, the plaintiffs' action for declaratory judgment is precluded. The associations' claims in both cases are similarly barred.

2. Time sensitivity is not an exception to the administrative procedures of the MCFA. MCL 260.215(16) dictates that the remedies afforded by the act are the exclusive means by which the act may be enforced. The MCFA lays out the schedule for the defendant to make a declaratory ruling. MCL 260.215(2). Under extenuating circumstances, the schedule may be extended by thirty days. MCL 260.215(3). Had the plaintiffs promptly sought a declaratory ruling under the MCFA, the administrative procedures would have been completed before the election.

3. Futility is not an exception to the administrative procedures of the MCFA. MCL 260.215(16) dictates that the remedies afforded by the act are the exclusive means by which the act may be enforced. A mere expectation that an administrative agency will act in a certain manner is insufficient to claim that following the administrative process is futile. A court must assume that, when given the opportunity, the administrative process will discover and correct its own errors.

4. The Administrative Procedures Act does not grant the trial court jurisdiction. MCL 24.263 and 24.301 govern appeals from declaratory rulings and contested case hearings. Neither permits a binding decision to be imposed on a party before it has had the opportunity for an administrative hearing. The memorandum and letters from the department were not decisions because they were not preceded by a hearing.

5. Framing an issue before an administrative agency as a constitutional challenge does not excuse the plaintiffs from pursuing statutorily imposed administrative remedies when other issues are in controversy.

6. The trial court did not err in granting the defendant's motion for summary disposition of counts II and III, even though it did so for other reasons, because the trial court was without jurisdiction.

Affirmed in part and reversed in part.

1. ELECTIONS — CAMPAIGN FINANCE ACT — DECLARATORY RULINGS.

An action in the circuit court for a declaratory judgment concerning a provision of the Michigan Campaign Finance Act may not be brought unless the Secretary of State has refused to issue a declaratory ruling; a party that disagrees with a declaratory ruling made by the Secretary of State may seek judicial review as provided in the Administrative Procedures Act (MCL 24.263, 169.215[16]).

2. ELECTIONS — CAMPAIGN FINANCE ACT — EXCLUSIVENESS OF REMEDY — TIME SENSITIVITY — FUTILITY.

Neither time sensitivity nor futility is an exception to the administrative procedures set by the Michigan Campaign Finance Act for a declaratory ruling on a provision of the act; the act sets out the time within which the Secretary of State must make a declaratory ruling, and only extenuating circumstances can extend that time; courts should not presume futility in an administrative appeal but should assume that the administrative process will, when given a chance, discover and correct its own errors (MCL 169.215[2]).

*Abbott Nicholson, P.C.* (by *Carl F. Jarboe*), for Huron Valley Schools and Robert M. O'Brien.

*White, Schneider, Young & Chiodini, P.C.* (by *Kathleen Corkin Boyle* and *J. Matthew Serra*), for Michigan

Education Association, Huron Valley Education Association, and Utica Education Association.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Gary P. Gordon,* Assistant Attorney General, for the Secretary of State.

Before: KELLY, P.J., and SAWYER and WILDER, JJ.

PER CURIAM. In Docket No. 253649, defendant Michigan Secretary of State appeals the trial court's order granting summary disposition and declaratory judgment in favor of plaintiffs Robert M. O'Brien and Huron Valley Schools. In Docket No. 253650, plaintiffs Michigan Education Association, Huron Valley Education Association, and Utica Education Association[1] appeal the trial court's order granting summary disposition in defendant's favor. We affirm in part and reverse in part on the basis of our determination that the trial court lacked subject-matter jurisdiction over plaintiffs' claims.

## I. FACTS

Several months before the November 2000 election, "Kids First! Yes!" filed complaints with defendant alleging that several school districts were violating the Michigan Campaign Finance Act (MCFA), MCL 169.201 *et seq.* After reviewing the complaints, defendant, in a memorandum dated July 24, 2000, addressed "All School Districts," including Huron Valley Schools. In the memorandum, defendant provided her interpretation of the MCFA's § 57—dealing with the contributions and expenditures of public bodies. The memorandum further stated: "Public bodies are hereby put on notice

---

[1] We refer to these plaintiffs collectively as "plaintiff associations."

that they may not utilize public resources to support or oppose a candidate or ballot question." In conclusion, the memorandum stated:

> This memorandum is not intended to suggest that your school district has misused public resources. Rather the Department wishes to be absolutely clear in its position regarding the enforcement of Section 57: it is up to the people, and not public bodies, to decide elections. Even if a school district or its employees believe a candidate or ballot question is not in their best interest, they may not utilize public resources to oppose the candidate or ballot question. Public body employees must use their own time and own resources to create and fund candidate and ballot question committees to engage in the political process.
>
> Please contact the Compliance and Rules Division . . . if you have any questions regarding Section 57.

On or about August 23, 2000, defendant addressed a similar letter to O'Brien stating that "there may be reason to believe that Huron Valley School District has violated Section 57 of the [MCFA]." In this letter, defendant individually addressed materials submitted to defendant by "Kids First! Yes!," namely: a "PowerPoint Presentation," "Voucher Presentation Memos," a presentation by the Huron Valley School District entitled "Fiscal Facts II," an article entitled "HVS Board votes to Oppose Vouchers" appearing in the school district's newsletter "Education Matters," e-mails from Huron Valley School District's director of communications, the "Huron Valley Educator," and press releases from the Huron Valley Schools Board of Education. Applying her interpretation of § 57 of the MCFA, defendant determined that every one of these materials "with the exception of the *Huron Valley Educator*, constitutes an expenditure on the part of HVSD." With regard to the *Huron Valley Educator*, the letter stated:

The *Huron Valley Educator* clearly opposes the Voucher Ballot Initiative. However, in your response, you indicated that the *Educator* was published and distributed by the Huron Valley Education Association. Thus, we have no reason to conclude that public resources were used to fund this anti-voucher initiative piece. We add, merely for informational purposes, that school resources, such as teacher mailboxes, may not be used to distribute material such as the *Educator* if it opposes a candidate or ballot question.

The letter further stated:

Because this is a case of first impression, we will let this letter serve as a warning to refrain from any further involvement in the election or defeat of candidates or the qualification, passage or defeat of ballot questions. However, if you choose to continue to make expenditures, we will request a hearing in which we will seek to levy fines and damages on the school district. The hearing will cover conduct described in this letter as well as any subsection of Section 57. The Department will seek $1,000 for each violation of the act as well as the full cost of resources utilized to create and distribute the material, including printing, postage, employee time, etc.

On August 31, 2000, defendant addressed a letter to George Contis, apparently representing the Utica School District, regarding "Dismissal of Campaign Finance Complaint." In the letter, defendant stated: "After a thorough review of all the evidence submitted in this case, we have found that there may be reason to believe that Utica Schools resources were used in violation of Section 57 of the [MCFA]. However, due to the nature of the violations, we have decided not to take any further action in this matter."

In their complaint, plaintiffs referred to these three documents as "a memorandum and several campaign finance complaint decisions . . . ." Plaintiffs alleged that, as a result of defendant's "edicts," the Huron

Valley School District and the Utica School District "have been forced to censor their employees' unions' communications, and have prohibited or will prohibit communications between unions and their members dealing with the election of the state and local candidates, and regarding ballot proposals such as Proposal 1 (the 'voucher' proposal)." They further alleged that if defendant "is not immediately restrained," plaintiffs and their employees and members "will suffer immediate and irreparable harm, because they will be severely hampered in their ability to communicate with them regarding important, time-sensitive matters relating to upcoming elections." Plaintiffs further alleged that they "have no adequate remedy at law because the passage of time will moot Plaintiffs' communications, depriving them of any meaningful effect whatsoever."

Plaintiffs' complaint consisted of three counts. In count I, plaintiffs alleged that defendant issued the "Huron Valley decision" without properly complying with the MCFA. Specifically, plaintiffs alleged that defendant should have proceeded under MCL 169.215(5) to informal methods such as "conference, conciliation, or persuasion" to reach an agreement and defendant's failure to do so deprived O'Brien and the Huron Valley Schools of due process and their rights under § 57(1) in regard to Proposal 1 on the November 7, 2000, ballot. Plaintiffs further alleged that the "Huron Valley decision" prevents O'Brien and the Huron Valley Schools from expressing their views and disseminating factual information on "issues relevant to the function of Huron Valley Schools . . . ."

In count II, plaintiffs alleged that the MCFA does not prohibit plaintiff associations from using internal school district communication systems because that use

is not an expenditure under MCL 169.206. Plaintiffs alleged that defendant's "decision" prevented them from communicating with their union members "during the last two months before the November 2000 election by using the usual and contractually permitted method of doing so."

In count III, plaintiffs alleged that defendant's "decision" deprived plaintiff associations of their constitutional rights to communicate with their members by the school districts' internal mail systems.

The trial court granted O'Brien's and the Huron Valley Schools' motion for summary disposition of count I and granted declaratory judgment to O'Brien and the Huron Valley Schools "as to all of Section 57(1) of the [MCFA]." The trial court subsequently granted summary disposition in defendant's favor with regard to counts II and III. Defendant appeals the trial court's ruling with respect to count I. Plaintiff associations appeal the trial court's ruling with respect to counts II and III.

## II. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

### A. ROBERT M. O'BRIEN AND HURON VALLEY SCHOOLS

#### 1. MCFA

Defendant contends that the trial court had no jurisdiction over count I of plaintiffs' complaint because plaintiffs failed to exhaust their administrative remedies. We agree. Whether a court has subject-matter jurisdiction is a question that this Court reviews de novo. *Papas v Gaming Control Bd*, 257 Mich App 647, 656-657; 669 NW2d 326 (2003).

Section 15(9) of the MCFA, MCL 169.215(9), now § 15(16), MCL 169.215(16), provided:

There is no private right of action, either in law or equity, pursuant to this act. The remedies provided in this act are the exclusive means by which this act may be enforced and by which any harm resulting from a violation of this act may be redressed.

This Court has held that "[a] declaratory judgment action cannot be maintained to resolve disputes which are within the exclusive jurisdiction of an administrative agency." *St Paul Fire & Marine Ins Co v Littky,* 60 Mich App 375, 378; 230 NW2d 440 (1975). This position is supported by this Court's more recent decision in *Citizens for Common Sense in Gov't v Attorney General,* 243 Mich App 43, 50; 620 NW2d 546 (2000), which held generally that "if the Legislature has expressed an intent to make an administrative tribunal's jurisdiction exclusive, then the circuit court cannot exercise jurisdiction over those same areas." With respect to the MCFA, this Court held:

The Legislature has directed the Secretary of State to promulgate rules and issue declaratory rulings to implement the MCFA pursuant to the APA [Administrative Procedures Act, MCL 24.201 *et seq.*] MCL 169.215(1)(e) . . . . The APA provides a formal procedure for submitting requests for declaratory rulings and governing treatment of any such requests. *Greenbriar Convalescent Center, Inc v Dep't of Public Health,* 108 Mich App 553, 560; 310 NW2d 812 (1981). Under the APA, an agency may issue declaratory rulings concerning the applicability of statutes, rules, or orders of the agency. MCL 24.263 . . . . Plaintiff could have requested a declaratory ruling regarding § 57, and, if the Secretary of State refused to issue such a ruling, plaintiff could have sought a declaratory judgment in the circuit court. MCL 24. 264 . . . . If the plaintiff had sought, and the Secretary of State had issued a ruling, that ruling would have been subject to judicial review under MCL 24.263 . . . . [*Citizens, supra* at 51.]

In count I of their complaint, plaintiffs sought a declaratory judgment interpreting § 57 of the MCFA. Plaintiffs alleged that defendant improperly interpreted the MCFA in a "campaign finance decision." However, defendant did not make a "decision," but, rather, sent a letter to O'Brien indicating that she had reason to believe that violations of § 57 of the MCFA were occurring. The letter further warned that *if* a violation were ultimately determined after a hearing, sanctions would follow. Thus, in order to properly challenge defendant's interpretation of the MCFA, plaintiffs should have first made a request for a declaratory ruling under § 15(2). If defendant refused to make such a ruling, then plaintiff could have sought a declaratory judgment in the circuit court. Further, if defendant made a declaratory ruling that plaintiffs disagreed with, then plaintiffs could have sought review of that ruling in the circuit court. *Citizens, supra* at 51. Because § 15(16) of the MCFA states that there is no private cause of action in law or equity, plaintiffs' declaratory judgment action is precluded.

### 2. TIME SENSITIVITY AND FUTILITY ARE NOT EXCEPTIONS TO THE MCFA'S ADMINISTRATIVE PROCEDURES

O'Brien and the Huron Valley Schools assert that even if they were subject to the administrative procedures of the MCFA, there was insufficient time before the November 2000 election and pursuing the available administrative remedies would have been futile. We disagree; time sensitivity and futility are not exceptions to the MCFA's administrative procedures.

The primary goal of judicial interpretation of statutes " 'is to ascertain and give effect to the intent of the Legislature.' " *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004) (citation omitted). This Court "may

read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). The plain language of § 15(16) of the MCFA provides that the remedies afforded by the act "are the *exclusive* means by which this act may be enforced . . . ." (Emphasis added). Even if plaintiffs' claims of time sensitivity or futility had merit, the MCFA nonetheless clearly requires plaintiffs to exhaust their administrative remedies before seeking review in the courts.

In any event, the claim of O'Brien and the Huron Valley Schools of time sensitivity is without merit. Plaintiffs' mere speculation about how long the proper administrative procedure would have taken is insufficient ground for avoiding those procedures when the MCFA sets forth specific time requirements for defendant's response. According to MCL 169.215(2), defendant is required to publicize a proposed response within forty-five business days of receiving the request for a declaratory ruling. Defendant is required to issue a final declaratory ruling within sixty business days of receiving a request for a declaratory ruling. Only under "extenuating circumstances" is defendant permitted to "issue a notice extending for not more than 30 business days the period during which [defendant] shall respond to a request for a declaratory ruling." MCL 169.215(3). These time requirements can only be waived by the party requesting a declaratory ruling. *Id.*

Here, defendant sent the memorandum to all school districts on July 24, 2000. Defendant sent the letter to O'Brien on August 23, 2000. And, finally, defendant sent the letter to Contis on August 31, 2000. If plaintiffs had promptly sought a declaratory ruling under the MCFA, defendant's proposed response would have been

due several weeks before November 7, 2000. If plaintiffs had sought administrative review after receiving the July 24, 2000, memo, even defendant's final declaratory ruling could have been issued well before the November 2000 election. Notably, the time required for defendant's response is significantly shorter than the time it has taken the courts to resolve this matter. By proceeding in circuit court, rather than administratively as required, plaintiffs never obtained the timely "decision" they argue they are entitled to and actually extended the time for ultimate resolution of this matter.

We also find no merit in the claim by O'Brien and the Huron Valley Schools that seeking administrative remedies would have been futile because defendant had already made her position clear in the memorandum and letters. In *Citizens,* the plaintiff similarly argued that it was not required to exhaust the administrative remedies provided in the MCFA when the effort would have been useless. Specifically, the plaintiff felt that the effort would have been useless because the Secretary of State's decision could be guessed when she was required to follow an opinion of the Attorney General. Even then, this Court rejected the plaintiff's argument noting that "courts should not presume futility in an administrative appeal but should assume 'that the administrative process will, if given a chance, discover and correct its own errors.'" *Citizens, supra* at 52, quoting *Greenbriar, supra* at 562, quoting *Canonsburg Gen Hosp v Dep't of Health,* 492 Pa 68, 74; 422 A2d 141 (1980) (punctuation deleted). This Court further noted that administrative law requires courts to move cautiously when called on to interfere with the jurisdiction of administrative agencies. *Citizens, supra* at 52. A mere expectation that an administrative agency will act a certain way is insufficient to satisfy the futility excep-

tion. *WA Foote Mem Hosp v Dep't of Pub Health,* 210 Mich App 516, 524-525; 534 NW2d 206 (1995).

In this case, defendant issued a memorandum and two letters giving a general interpretation of § 57 of the MCFA and warning first "All School Districts" and then O'Brien specifically that violations of the MCFA may be occurring. Defendant did not conduct a hearing, make any findings of fact, or make a decision. Plaintiffs apparently disagreed with defendant's interpretation and did not believe that they were violating the MCFA. Because the Legislature directed defendant to issue declaratory rulings and implement the MCFA, plaintiffs were required to pursue the administrative remedies provided in the MCFA. We disagree with the suggestion that administrative remedies would have been futile simply because defendant had already rendered an interpretation of § 57 of the MCFA and concluded that violations of the MCFA may be occurring. Following well-established precedent, we assume that the administrative process will, if given a chance, discover and correct any errors there might be in defendant's interpretation and application of the MCFA. Plaintiffs' mere speculation, based on defendant's memorandum and letters, regarding what defendant's ruling might be is insufficient to establish futility.

### 3. ADMINISTRATIVE PROCEDURES ACT

O'Brien and the Huron Valley Schools also assert that the trial court had jurisdiction over count I under the Administrative Procedures Act (APA), specifically MCL 24.263 and 24.301, which govern, respectively, appeals from declaratory rulings and contested case hearings. We disagree.

MCL 24.263 provides:

On request of an interested person, an agency may issue a declaratory ruling as to the applicability to an actual state of facts of a statute administered by the agency or of a rule or order of the agency. An agency shall prescribe by rule the form for such a request and procedure for its submission, consideration and disposition. A declaratory ruling is binding on the agency and the person requesting it unless it is altered or set aside by any court. An agency may not retroactively change a declaratory ruling, but nothing in this subsection prevents an agency from prospectively changing a declaratory ruling. A declaratory ruling is subject to judicial review in the same manner as an agency final decision or order in a contested case.

MCL 24.301 provides:

When a person has exhausted all administrative remedies available within an agency, and is aggrieved by a final decision or order in a contested case, whether such decision or order is affirmative or negative in form, the decision or order is subject to direct review, by the courts as provided by law. . . .

Under MCR 7.105(A)(2), " 'Contested case' means a proceeding including but not limited to ratemaking, price fixing, and licensing, in which determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for evidentiary hearing. . . ."

Neither MCL 24.263 nor MCL 24.301 permits a binding decision to be imposed on a party before it has had the opportunity for a hearing. O'Brien and the Huron Valley Schools assert that they had a due process right to a hearing before defendant issued an opinion. We agree that, pursuant to these statutes, this is true. However, defendant's memorandum and letters were not declaratory rulings or decisions. Indeed, pursuant to MCL 24.263 and MCL 24.301, we could not construe defendant's memorandum and letters to be "decisions"

precisely because they were not preceded by a hearing. Therefore, we reject the argument of O'Brien and the Huron Valley Schools that the trial court had jurisdiction over count I of plaintiffs' complaint under these sections of the APA.

### 4. CONCLUSION

In conclusion, defendant's memorandum and letters were not decisions that could be reviewed by the circuit court under either the MCFA or the APA. Because plaintiffs sought resolution of how the MCFA should be interpreted and applied under the circumstances of this case, they were required to follow the procedures set forth in the MCFA, and defendant had exclusive jurisdiction over these matters. Therefore, the trial court lacked subject-matter jurisdiction over count I of plaintiffs' complaint. The trial court erred in denying defendant's motion to dismiss plaintiffs' count I.

### B. PLAINTIFF ASSOCIATIONS

Plaintiff associations present several arguments for their proposition that the trial court erred in granting defendant's motion for summary disposition of counts II and III of plaintiffs' complaint. However, for the same reasons discussed above, the trial court did not have jurisdiction over plaintiffs' claims in counts II and III. Plaintiff associations argue that they were not required to exhaust the administrative remedies under the MCFA because they were not parties to defendant's memorandum and letters. We disagree. Plaintiff associations were required to exhaust their administrative remedies because they sought review of defendant's interpretation of the MCFA and because the remedies afforded by the act "are the *exclusive* means by which this act may be enforced." MCL 169.215(16) (emphasis

added). With respect to count III, which raised constitutional challenges, the mere framing of an issue as constitutional does not excuse plaintiff associations "from pursuing statutorily imposed administrative remedies when other issues are in controversy." *WA Foote Mem Hosp, supra* at 524. Therefore, the trial court did not err in granting defendant's motion for summary disposition of counts II and III even though it did so for other reasons. *Taylor v Laban,* 241 Mich App 449, 458; 616 NW2d 229 (2000).

Affirmed in part and reversed in part.